475 F.2d 968
 4 ERC 1945, 154 U.S.App.D.C. 384, 3
Envtl. L. Rep. 20,155
 NATURAL RESOURCES DEFENSE COUNCIL, INC., Petitioner,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent (two cases).
FRIENDS OF THE EARTH, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent, Commonwealth of
Kentucky, Intervenor.
 Nos. 72-1522, 72-1598, 72-1810, 72-1941, 72-1982, 72-1985,
72-2028 and 72-2159.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 22, 1973.
Decided Jan. 31, 1973.
 
 David G. Hawkins, Washington, D. C., for petitioners.
 Asst. Atty. Gen. Kent Frizzell and Edmund B. Clark, Atty., Dept. of Justice, for respondent.
 Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.
 ORDER
 PER CURIAM:
 
 
 1
 These causes came on for consideration of petitioners' motion for summary reversal, and the court heard argument of counsel. We must initially determine whether we have jurisdiction over all of these consolidated cases. Section 307(b)(1) of the Clean Air Act, 42 U.S.C. Sec. 1857h-5(b)(1) (1970), provides that a petition for review of the Administrator's action in approving or promulgating any implementation plan "may be filed only in the United States Court of Appeals for the appropriate circuit." We agree with petitioners and with the Court of Appeals for the First Circuit, see Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 1 Cir., 465 F.2d 492 (1972), that by the phrase "the appropriate circuit" Congress did not intend that all suits involving approval of state implementation plans be brought in the judicial circuit where the state is located. Instead, Congress intended to adopt a flexible approach to determine which circuit is appropriate, and application of this approach to the facts of these cases and the legal issues we are presently called upon to decide permits us to hear all of these consolidated cases.
 
 
 2
 First, elsewhere in the Act, in a provision concerning judicial review of another kind of action by the Administrator, Congress expressly provided that judicial review shall be in the "court of appeals for the circuit which includes such State." See Section 110(f)(2)(B), 42 U.S.C. Sec. 1857c-5(f)(2)(B). That it did not use the same language in Section 307(b)(1) and instead used the vague phrase "the appropriate circuit" indicates that Congress intended the latter phrase to mean something other than the more specific review provision in Section 110(f)(2)(B). Secondly, we might note that failure to interpret Section 307(b)(1) in a flexible manner would produce some anomalous results. The Administrator has informed us that implementation plans in several metropolitan areas cover jurisdictions falling within several circuits. In our own metropolitan area of the District of Columbia and the surrounding Virginia and Maryland suburbs, for example, adoption of the Administrator's narrow interpretation of the statute would require review of the Administrator's approval of the D. C. metropolitan area implementation plans to take place in both our own court and the Court of Appeals for the Fourth Circuit. We doubt that Congress intended such a result, especially in light of the indication elsewhere in the Act of a strong congressional concern for coordinated decision-making with respect to metropolitan areas crossing over several jurisdictions. See 42 U.S.C. Secs. 1857c-1, 1857c-2.
 
 
 3
 Applying this flexible approach to the cases presently before us, it is clear from the record that all of these cases raise identical legal issues. None of these issues involve facts or laws peculiar to any one jurisdiction; rather, all concern uniform determinations of nationwide effect made by the Administrator. Requiring these cases to be prosecuted in the several circuits will only lead to delay on a question where time is literally of the essence, and will needlessly tax the agency's legal resources. We therefore hold that we have jurisdiction to hear these cases.
 
 
 4
 We also note, before considering the merits, that regardless of whether this court has jurisdiction to review the approval of implementation plans of jurisdictions other than the District of Columbia, all parties agree that we have jurisdiction to review the legality of the Administrator's approval of the implementation plan for the District of Columbia and surrounding Maryland and Virginia suburbs, and should our jurisdiction as to other areas successfully be challenged, our order is intended to remain in force limited to the local area.
 
 
 5
 Turning to the merits, we find that the Administrator acted in the best of faith in attempting to comply with the difficult responsibilities imposed on him by Congress. Nevertheless, he did not conform to the strict requirements of the Clean Air Act of 1970 in permitting several states to delay submission of transportation control portions of their implementation plans until February 15, 1973, and in granting extensions until mid-1977 for attainment of the national primary ambient air standard without following the procedures established in Section 110(e), 42 U.S.C. Sec. 1857c-5(e). The combined effect of these unlawful actions has been to interfere with the congressional purpose of attaining clean air by a date certain, May 31, 1975, subject only to certain limited and well defined statutory extensions. The Act plainly does not permit extensions of the statutory time for submission by each state of an implementation plan which will permit attainment of the standards by 1975. Whether or not the technology for implementation of or compliance with the plan is available is a matter for the grant of extensions under Sections 110(e) and (f) after the plan is filed.
 
 
 6
 In order to remedy these violations of the Act, the Administrator and the states must return to the procedures and the timetable established by the Congress.
 
 
 7
 Accordingly, it is ordered by this court that:
 
 
 8
 (1) The Administrator shall formally rescind, through notice to the states and through publication in the Federal Register, the February 15, 1973 extension granted to several states to submit the transportation control portions of their implementation plans.
 
 
 9
 (2) The Administrator shall formally rescind, through notice to the states and through publication in the Federal Register, the extension granted to several states to delay implementation of their plans or portions thereof until May 31, 1977.
 
 
 10
 (3) The Administrator shall inform all states concerned,* by direct notice and through publication in the Federal Register, that all states which have not yet submitted an implementation plan fully complying with the requirements of the Clean Air Act of 1970 must submit such a plan by April 15, 1973. That plan must satisfy each and every requirement of Sections 110(a)(2)(A) through (H) if it is to be approved by the Administrator. In particular, it must provide for the attainment of the primary standard as expeditiously as practicable but in no case later than May 31, 1975, and it must include "emission limitations, schedules, and timetables for compliance with such limitations, and such other measures as may be necessary to insure attainment and maintenance of such primary or secondary standard, including, but not limited to, land-use and transportation controls."
 
 
 11
 (4) The Administrator shall, within two months after the date required for submission of a plan under paragraphs (3) or (9) of this order, approve or disapprove such plan or each portion thereof pursuant to the requirements of Section 110(a)(2).
 
 
 12
 (5) If any state fails to comply with the requirements of paragraphs (3) or (9) of this order, or if any state plan is determined by the Administrator not to be in accordance with the requirements of Sections 110(a)(2)(A) through (H) and with the requirements of paragraphs (3) or (9) of this order, the Administrator shall prepare, publish and promulgate regulations setting forth an implementation plan, or portion thereof, for the noncomplying state, following the procedures established in Section 110(c) except that any such regulation shall be promulgated within four months after the date required for submission of such plan under paragraphs (3) or (9) of this order.
 
 
 13
 (6) The Administrator shall not grant any state an extension for attainment of the primary standard unless he first complies with the procedures established in Section 110(e), namely:
 
 
 14
 He must first have before him a plan which provides for attainment of the national ambient air quality primary standard by May 31, 1975.
 
 
 15
 He must determine, on the basis of a submission by the governor of the state, that one or more emission sources (or classes of moving sources) are unable to comply with the requirements of such plan for the reasons set out in Section 110(e)(1)(A).
 
 
 16
 He must determine that the state has considered and applied as a part of its plan reasonably available alternative means of attaining the primary standard and has justifiably concluded that attainment of the primary standard by May 31, 1975 cannot be achieved.
 
 
 17
 He must determine that the state plan provides for application, by May 31, 1975, of the requirements of the plan which implement the primary standard to all emission sources other than the sources (or classes) which he has determined are unable to comply.
 
 
 18
 Finally, he must determine that the state plan provides for such interim measures of control of the sources (or classes) which he has determined are unable to comply with the implementation plan as are reasonable under the circumstances.
 
 
 19
 (7) The Administrator shall permit the public to comment on any state plan submitted pursuant to paragraphs (3) or (9) of this order and on the request by the governor of any state for an extension of the date for attainment of the primary standard beyond May 31, 1975. Such opportunity may be limited to the filing of written comments without the necessity of a hearing.
 
 
 20
 (8) The Administrator shall, in approving or disapproving any state plan submitted pursuant to paragraphs (3) or (9) of this order and in approving any extension for attainment of the primary standard beyond May 31, 1975, state his reasons for taking such action, considering both the material submitted by the states and that submitted by the public, see Kennecott Copper Corp. v. Environmental Protection Agency, 149 U.S.App.D.C. 231, 462 F.2d 846 (1972); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 87-88, 439 F.2d 584, 597-598 (1971).
 
 
 21
 (9) In view of the competing contentions with respect to whether or not each state plan approved by the Administrator provided for maintenance of the primary and secondary standards beyond the May 31, 1975 attainment date, and in view of the absence of any definite indication in the present record as to whether or not such a state-by-state determination was made, the Administrator shall, within 30 days from the date of this order, review the maintenance provisions of all state implementation plans presently approved. Those plans which do not provide for measures necessary to insure the maintenance of the primary standard after May 31, 1975, and those plans which do not analyze the problem of maintenance of standards in a manner consistent with applicable regulations, see 40 C.F.R. Sec. 51.12(a) (1972), shall be disapproved. In such a case, the state should be directed to prepare a new implementation plan for maintenance of standards by April 15, 1973. All new plans for maintenance shall be dealt with by the Administrator in the manner set out in paragraphs (4) and (5) of this order.
 
 
 22
 It is so ordered.
 
 
 23
 Circuit Judge MacKinnon's concurring statement follows.
 
 MacKINNON, Circuit Judge, concurring:
 
 24
 The foregoing order is technically in conformance with the statute but in some respects it ignores reality. The statute contemplates and requires each state to submit transportation control plans as part of their implementation plans to enforce primary standards of air quality within certain fixed time limits. The Administrator is authorized to extend the time limits "[u]pon application of a Governor of a State at the time of submission of any plan implementing a national ambient air quality primary standard . . . if after review of such plan the Administrator determines that" the necessary technology or other alternatives will not be available so as to permit attainment of the objectives within the earliest statutory time limits. Section 110(e). (Emphasis added.) In the event any state fails to submit an implementation plan within the time prescribed the Administrator is directed to prepare an implementation plan for the State. Section 110(c).
 
 
 25
 Recognizing this design of the Act, and the existing state of the technology necessary to achieve the desired results within the earliest statutory time limits, the Administrator concluded that if the duty devolved upon him he would be unable to develop supportable plans for the states in question. The reasonableness of this conclusion is not denied. The Administrator stated his position in 37 Fed.Reg. 10844 (1972):
 
 
 26
 The Environmental Protection Agency had already begun an assessment of the extent to which various transportation control measures, including motor vehicle inspection and installation of emission control devices on in-use automobiles, could be expected to produce improvements in air quality, but it was apparent that the results would not be available within the time allowed for development of State plans. Accordingly, the States were advised that adoption of transportation control schemes could be deferred beyond the statutory deadline for submittal of implementation plans but that State plans would have to define the degree of emission reduction to be achieved through transportation control measures and identify the measures being considered.
 
 
 27
 In reaching this practical conclusion the Administrator did not walk through all the steps provided by the statute and our order requires that he do so. Petitioners do not deny that complete workable plans for all the states are not presently feasible, but they contend something might be gained by the states and the agency towards achieving the results sought by the Act if the states are required to literally comply with all the formal steps provided by the statute; particularly those contained in Section 110(e)(2) which require states to implement the primary standards by interim measures of control where final implementation plans are technically infeasible. The extent to which compliance with these requirements might produce beneficial results is not known, but since something might conceivably be gained, I concur in the order.
 
 
 
 *
 These states should include all those listed in paragraphs 1, 2 and 5 of the stipulation between petitioners and the EPA in Addendum to Petitioners' Motion for Summary Reversal