The DAYTON POWER AND LIGHT COMPANY et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondents.

BUCKEYE POWER, INC., et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY and Russell E. Train, Administrator of the Environmental Protection Agency, Respondents.

AMERICAN PETROLEUM INSTITUTE et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

ALABAMA POWER COMPANY et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY and Russell E. Train, Respondents.

The MEAD CORPORATION, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

KENNECOTT COPPER CORPORATION et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, and Russell E. Train, Administrator, Respondents.

Nos. 74–2297, 74–2358, 75–1001, 75–1118, 75–1212 and 75–1398.

United States Court of Appeals, Sixth Circuit.

June 16, 1975.

Harry H. Voigt, Henry V. Nickel, Eugene R. Fidell, LeBoeuf, Lamb, Leiby & MacRae, Washington, D. C., for petitioners and Edison Elec. Institute, intervenor, in No. 74–2297.

Bruce J. Terris, Nathalie V. Black, Washington, D. C., John D. Hoffman, San Francisco, Cal., H. Anthony Ruckel, Denver, Colo., for Sierra Club, Metropolitan Washington Coalition for Clean Air, New Mexico Citizens for Clean Air and Water, John Tanton, Md.

Robert G. Stachler, Taft, Stettinius & Hollister, Cincinnati, Ohio, for American Petroleum Institute, Standard Oil Co., Atlantic Richfield Co., Continental Oil Co., Exxon Corp., Gulf Oil Corp., Mobil Oil Corp., Shell Oil Corp., Texaco, Inc., Union Oil Co. of Cal.

Leslie Henry, Wilson W. Snyder, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for petitioners in No. 74–2358.

Charles D. Lindberg, Robert G. Stachler, Taft, Stettinius & Hollister, Cincinnati, Ohio, John J. Adams, Alison K. Schuler, Hunton, Williams, Gay & Gibson, Washington, D. C., for petitioners in No. 75–1001.

S. Eason Balch, Robert A. Buettner, John P. Scott, Jr., Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, Ala., for petitioners in No. 75–1118.

Robert H. Maynard, Smith & Schnacke, Dayton, Ohio, for petitioners in No. 75–1212.

Jon L. Kyl, Bruce Norton, Snell & Wilmer, Phoenix, Ariz., for Salt River and others.

Alfred V. J. Prather, J. William Doolittle, Prather, Levenberg, Seeger, Doolittle, Farmer & Ewing, Washington, D. C., for Kennecott Copper Corp. and others.

Francis M. Shea, Richard T. Conway, David Booth Beers, James R. Bieke, Shea & Gardner, Washington, D. C., Edward G. Chander, Athearn, Chandler & Hoffman, San Francisco, Cal., for Montana Power Co. and others.

Mathew H. Feiertag, Deputy Atty. Gen., Carson City, Nev., for State of Nevada.

Alan G. Kirk, II, Gen. Counsel E. P. A., Richard J. Denney, Jr., Asst. Gen. Counsel E.P.A., Erica Dolgin, Edmund B. Clark, Attys., Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for respondents.

Before PHILLIPS, Chief Judge, and PECK and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

These consolidated cases require us to decide which Circuit Court of Appeals should hear petitions filed by numerous parties seeking review of certain regulations promulgated by the Environmental Protection Agency (EPA). For the reasons stated below, we believe that the Clean Air Act, 42 U.S.C. § 1857 et seq., establishes the Court of Appeals for the District of Columbia Circuit as the proper court to decide the petitions for review, and accordingly we must transfer these cases to that court.

Before 1972, EPA took the position that the Clean Air Act did not prevent the states from allowing existing air quality to deteriorate so long as the pollution remained less than the level prescribed in the national secondary ambient air quality standards. In 1972, however, the District Court for the District of Columbia concluded otherwise and ordered EPA to promulgate regulations prohibiting significant deterioration of air quality in areas where the existing air quality is better than the national standards. *Sierra Club v. Ruckelshaus,* 344 F.Supp. 253 (D.D.C.), *aff'd mem.,* 4 E.R.C. 1815 (D.C.Cir., 1972), *aff'd by an equally divided Court sub nom. Fri v. Sierra Club,* 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973).

In response to the District Court's order, EPA promulgated regulations, 39 Fed.Reg. 42510 (1974), establishing three classes of areas: in Class I areas almost any deterioration would be impermissible; in Class II areas the deterioration normally accompanying moderate growth would be permitted; and in Class III areas deterioration up to the national standards would be permitted. The regulations initially designated all areas as Class II, subject to redesignation initiated by the states in accordance with a specified administrative procedure. In addition, the regulations established a preconstruction review procedure for certain new and modified stationary emission sources to ensure that the permissible pollution increment for the area would not be exceeded. The regulations were developed through a unitary rule-making procedure, and they have the effect of amending every state's air quality implementation plan in precisely the same way.

The regulations were announced by EPA and explained in some detail at a large public meeting held in Washington, D. C., on the morning of November 27, 1974. At 2:15 p. m. on November 27, a petition for review of these regulations was filed in this court by Dayton Power and Light Company and four other utilities. At 3:23 p. m. on the same day Sierra Club filed a similar petition in the Court of Appeals for the District of Columbia Circuit. Additional petitions for review of these regulations subsequently were filed in this court and in the Fifth, Seventh, Ninth, and Tenth Circuits. Sierra Club was permitted to intervene in the cases filed in this court. The Fifth and Ninth Circuit cases have been transferred to this court, and the Seventh and Tenth Circuit cases have been transferred to the District of Columbia Circuit.

The Dayton Power and Light Company has petitioned for a writ of mandamus to compel EPA to file the administrative record in this court. Sierra Club and EPA have filed motions to transfer the petitions for review to the District of Columbia Circuit. Petitioners in the Ninth Circuit cases have filed motions to transfer their petitions back to the Ninth

Circuit. All of these petitions and motions raise the common question whether this court or some other court should review these regulations on the merits.

The air quality deterioration regulations at issue here amended state implementation plans, and as such, they were promulgated pursuant to 42 U.S.C. § 1857c–5(c). The parties therefore conclude, and we agree, that jurisdiction to review these regulations is conferred by 42 U.S.C. § 1857h–5(b)(1), which provides as follows:

> (b)(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c–7 of this title, any standard of performance under section 1857c–6 of this title, any standard under section 1857f–1 of this title (other than a standard required to be prescribed under section 1857f–1(b)(1) of this title), any determination under section 1857f–1(b)(5) of this title, any control or prohibition under section 1857f–6c of this title, or any standard under section 1857f–9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 of this title or section 1857c–6(d) of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day.

This case plainly falls within the second sentence of § 1857h–5(b)(1), and we therefore must determine which is the "appropriate circuit" to review these regulations.

Dayton Power and Light Company and the other petitioners take the position that because the regulations amend state implementation plans, interested persons are entitled to review in the Court of Appeals for the local circuit. Thus, under the theory of petitioners, this court would be the appropriate circuit to review the regulations insofar as they amend the implementation plans of Michigan, Ohio, Kentucky, and Tennessee. Petitioners also suggest that even if it is concluded that both the Sixth and the District of Columbia Circuits are "appropriate," the regulations still should be reviewed here under 28 U.S.C. § 2112(a)[1] since the first petition for review was filed in this court. Sierra Club and EPA argue that because the regulations are national in scope and uniformly applicable to every state, the District of Columbia Circuit is the "appropriate circuit" within the meaning of § 1857h–5(b)(1). In addition, Sierra Club contends that the first valid petition for review in fact was filed in the District of Columbia Circuit and that 28 U.S.C. § 2112(a) therefore offers no support for petitioners' position.

Initially, we note that the first sentence of § 1857h–5(b)(1), lists a number of administrative actions that may be reviewed only in the District of Columbia Circuit. The second sentence specifies other actions, including amendments to implementation plans, that may be reviewed only in the "appropriate circuit." Petitioners argue that because Congress expressly made certain EPA decisions reviewable exclusively in the District of Columbia Circuit, it would be anomalous

1. Section 2112(a) provides in part as follows:

   If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

to interpret the word "appropriate" in a way that would produce the same result with respect to other types of administrative decisions. Thus petitioners believe that by "appropriate" Congress must have meant the local circuit having jurisdiction over the state or air quality region affected by the administrative action at issue. The problem with this interpretation is that elsewhere in the Clean Air Act Congress has conferred jurisdiction specifically upon the circuit that includes the affected state. For example, an EPA decision postponing applicability of a particular state's implementation plan to certain pollution sources would be subject to review "by the United States court of appeals for the circuit which includes such State . . . ." 42 U.S.C. § 1857c–5(f)(2)(B). We believe that if Congress had intended a similar meaning for the second sentence of § 1857h–5(b)(1), it would have said so. Accordingly, we must assume that Congress purposely used the indefinite phrase "appropriate circuit" in conferring jurisdiction.

The legislative history of the Act provides some clues to the meaning of "appropriate circuit." The parties refer us to the following passage from the Senate Report:

> Because many of these administrative actions are national in scope and require even and consistent national application, the provision specifies that any review of such actions shall be in the United States Court of Appeals for the District of Columbia. For review of the approval or promulgation of implementation plans which run only to one air quality control region, the section places jurisdiction in the U.S. Court of Appeals for the Circuit in which the affected air quality control region, or portion thereof, is located.

S.Rep. No. 91–1196, 91st Cong., 2d Sess. 41 (1970). The subject of the quoted language is § 308 of Senate Bill 4358, which is quite similar to § 1857h–5(b)(1). This language appears to be merely descriptive of the types of administrative actions specifically enumerated in § 1857h–5(b)(1) and does not lead inescapably to any particular interpretation of the word "appropriate." The passage, however, does reflect a congressional belief that consistent application of national regulations is often desirable and can be achieved through exclusive jurisdiction in the District of Columbia Circuit.

The reported decisions provide considerably more assistance in locating the "appropriate circuit." In *National Resources Defense Council v. EPA,* 465 F.2d 492 (1st Cir. 1972), petitioners sought review of administrative action granting a two-year extension of the statutory deadline for attainment of air quality standards for transportation-related pollutants and approving state plans that failed to provide for the adoption of transportation controls. Petitioners filed motions to transfer the case to the District of Columbia Circuit, and the court was required to determine which circuit was the "appropriate" one under § 1857h–5(b)(1). The court concluded that Congress had suggested a "flexible approach" by using the imprecise term "appropriate" circuit. Accordingly, the court weighed all of the factors bearing upon its decision:

> Whatever words are used to describe the Administrator's actions on the three issues presented, we fail to understand how his rationale relates specifically to each individual state plan. The legal issues raised by petitioners in the First Circuit seem to be identical with those raised in every other circuit. The parties are the same. There do not appear to be factual questions unique to each circuit. We must also consider that litigation in several circuits, with possible inconsistent and delayed results on the merits, can only serve to frustrate the strong Congressional interest in improving the environment as evidenced by the Clean Air Act. Additionally, we do not feel that judicial manpower is so abundant so as to permit several circuits to solve identical complex legal and factual issues in the present case. We note that petitioners first filed in

the United States Court of Appeals for the District of Columbia Circuit. That is where the Environmental Protection Agency has its headquarters. That is where the appropriate files are kept and where the regulations were announced. In light of all these factors we are led to conclude that the D.C. Circuit is "the appropriate circuit" to hear petitioner's claims. 465 F.2d at 495.

The Court of Appeals for the District of Columbia Circuit subsequently accepted the transfer from the First Circuit, agreeing that "Congress intended to adopt a flexible approach to determine which circuit is appropriate . . . ." under § 1857h–5(b)(1). *Natural Resources Defense Council v. EPA,* 154 U.S.App.D.C. 384, 475 F.2d 968, 969 (1973). In assuming jurisdiction, the District of Columbia Circuit looked to several of the factors that also had influenced the First Circuit:

> Applying this flexible approach to the cases presently before us, it is clear from the record that all of these cases raise identical legal issues. None of these issues involve facts or laws peculiar to any one jurisdiction; rather, all concern uniform determinations of nationwide effect made by the Administrator. Requiring these cases to be prosecuted in the several circuits will only lead to delay on a question where time is literally of the essence, and will needlessly tax the agency's legal resources. We therefore hold that we have jurisdiction to hear these cases. 475 F.2d at 970.

■ We conclude that these two recent cases were decided correctly and that the case at bar should be subjected to a similar analysis. The regulations at issue here were the product of a unitary rule-making proceeding. They are na-

tional in scope and apply uniformly throughout the country.[2]

At this stage we perceive in this case no questions of law or fact that will vary from one jurisdiction to another. If these regulations were to be reviewed in the Court of Appeals for each circuit there would be a substantial risk of seriously inconsistent results and an inevitable delay in the effectuation of the important national policies underlying the Clean Air Act. Finally, we note that the regulations were promulgated in response to an order affirmed by the District of Columbia Circuit. Clearly that court is in the best position to determine whether the regulations are consistent with its order.

■ For these reasons, we hold that the District of Columbia Circuit is the appropriate circuit to review these regulations within the meaning of § 1857h–5(b)(1). Moreover, we conclude that 28 U.S.C. § 2112(a) has no application to this case. That section would control only if petitions for review had been filed in more than one appropriate circuit. It follows that all six of these cases must be transferred to the District of Columbia Circuit, an action we take in the exercise of our inherent power to transfer cases to another court of appeals. *See Natural Resources Defense Council v. EPA, supra,* 465 F.2d 492, 495–96 (1st Cir. 1972); *Eastern Air Lines, Inc. v. CAB,* 122 U.S.App.D.C. 375, 354 F.2d 507, 510 (1965); *Panhandle Eastern Pipe Line Co. v. FPC,* 343 F.2d 905, 909 (8th Cir. 1965).

Accordingly, we deny the petition for a writ of mandamus to require EPA to file the administrative record in this court.

The motions made by petitioners in the Ninth Circuit cases to transfer their cases back to the Ninth Circuit are denied.

---

2. This distinguishes the present case from *Buckeye Power, Inc. v. EPA,* 481 F.2d 162, 166 (6th Cir. 1973), in which we stated that interested persons may file petitions for review of EPA action approving or disapproving state implementation plans only "in the United States Court of Appeals having jurisdiction over their area." *Buckeye* involved not a uniform amendment to all state plans, but the propriety of approving the particular plans submitted by Kentucky and Ohio, and the Sixth Circuit was plainly the "appropriate" one.

The motions made by EPA and the Sierra Club to transfer these cases to the District of Columbia Circuit are granted, and it is ordered that all six cases be transferred to the United States Court of Appeals for the District of Columbia Circuit.

All other matters are left for decision by the Court of Appeals for the District Columbia Circuit.

The costs in this Court are assessed against the petitioners.